UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LEONARDO VALDE-CRUZ,

                              Plaintiff,

            v.

ANTHONY RUSSO, et al.,

                              Defendants.

No. 20-CV-9240 (KMK)

OPINION & ORDER

Appearances:

Leonardo Valde-Cruz
Stormville, NY
*Pro Se Plaintiff*

Ian Ramage, Esq.
New York State Office of the Attorney General
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

        Leonardo Valde-Cruz ("Plaintiff"), proceeding pro se, brings this Action, pursuant to 42

U.S.C. § 1983 and state law, against Correctional Officers Gregory Reyes ("Reyes"), Robert

Stark ("Stark"), and Othello Coleman ("Coleman"; together with Reyes and Stark, "CO

Defendants"), and Deputy Superintendent of Security at Green Haven Correctional Facility

("Green Haven") Anthony Russo ("Russo"; collectively, "Defendants"), and alleging that

Defendants failed to protect Plaintiff from being attacked by another incarcerated individual.

(*See* Am. Compl. ("AC") § V, ¶¶ 10–25 (Dkt. No. 20).)  Before the Court is Russo's Motion To

Dismiss the Amended Complaint (the "Motion") pursuant to Federal Rule of Civil Procedure 12(b)(6).  (*See* Not. of Mot. (Dkt. No. 28).)[1]

For the reasons stated herein, the Motion is granted.

<u>I.  Background</u>

<u>A.  Factual Background</u>

The following facts are drawn from the AC and are assumed to be true for the purpose of resolving the instant Motion.  *See Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam).

Plaintiff is and was incarcerated at Green Haven throughout the events giving rise to this Action.  (*See generally* AC § V.)

On July 4, 2020, Plaintiff was assaulted by a fellow incarcerated individual ("Inmate Arnold").  (*Id.* § V, ¶ 10.)  During the assault, Plaintiff sustained a cut.  (*Id* § V, ¶ 11.)  Plaintiff alleges that after Inmate Arnold cut him, Inmate Arnold ran.  (*Id.*)  While Plaintiff ran after Inmate Arnold, Plaintiff alleges he was unsuccessful and did not engage with Inmate Arnold. (*Id.*)  Nonetheless, Plaintiff alleges that a misbehavior report regarding the incident—filed by a corrections officer not a named in this Action—states that Plaintiff and Inmate Arnold "exchang[ed] close[d] fist punches to each other's face and upper body."  (*Id.* § V, ¶ 12.)  The assault was bad enough that Plaintiff "received thirty-two (32) stitches."  (*Id.* § V, ¶ 13.) Plaintiff alleges that "Inmate Arnold was not searched or put through a metal detector," which "allow[ed] him to proceed . . . with a weapon that was used to cut Plaintiff."  (*Id.* § V, ¶ 14.)

---

[1] CO Defendants have not appeared in this Action and have not joined the Motion.

On January 19, 2021, Plaintiff and Inmate Arnold engaged in a second fight.  (*Id.* § V, ¶ 16.)  Plaintiff alleges that over the course of the fight, "Plaintiff sustained burns to his lower back from being pushed against a radiator."  (*Id.*)  Plaintiff alleges that he and Inmate Arnold were ordered to stop by Corrections Officer Nieves-Dehalle, who is not named in this Action. (*Id.* § V, ¶ 17.)  Plaintiff acknowledges that he refused to do so and that Nieves-Dehalle was forced to physically stop Plaintiff.  (*Id.*)  Subsequently, Nieves-Dehalle placed Plaintiff in "mechanical restraints" and had Plaintiff medically evaluated.  (*Id.*)

Finally, Plaintiff alleges that he was removed from his cell on January 25, 2021, and "placed in Involuntary Protective Custody" upon the recommendation of another corrections officer not named in the suit.  (*Id.* § V, ¶ 18.)

As a result of the events alleged, Plaintiff seeks relief in the form of a declaratory judgment, compensatory damages, punitive damages, and any other form of relief the Court deems just and proper.  (*Id.* § V, ¶¶ 27–29.)

B.  Procedural Background

Plaintiff's Complaint was docketed on November 4, 2020, (Dkt. No. 2); his request to proceed in forma pauperis ("IFP") was granted on November 17, 2020, (Dkt. No. 7).  On December 1, 2020, the Court issued a *Valentin* order requiring Defendants to identify unidentified personnel named as John Does in the original complaint and for Plaintiff to subsequently re-file the Complaint once that information was provided.  (Dkt. No. 9.)  On February 1, 2021, pursuant to the Court's *Valentin* order, the New York Attorney General provided the names and service addresses of the three "John Doe" individuals whom the Plaintiff wanted to sue but could not identify.  (Dkt. No. 13.)

On April 6, 2021, the Court received a letter from Plaintiff acknowledging Defendants' compliance with the *Valentin* order, seeking an extension of time to file his amended complaint, and requesting appointment of counsel.  (Dkt. No. 18.)  The following day, the Court granted Plaintiff's request for an extension, but denied his request for appointment of counsel.  (Dkt. No. 19.)  Following this Order, Plaintiff filed the AC on his own, which was docketed on May 7, 2021.  (Dkt. No. 20.)

On July 13, 2021, Russo filed a letter-motion with the Court requesting a conference to discuss Defendants' intention to file a motion to dismiss.  (Dkt. No. 25.)  The next day, the Court issued an order terminating the letter motion and setting the deadline for Russo to file his Motion to Dismiss by no later than August 14, 2021, the deadline for Plaintiff to file a response by no later than September 14, 2021, and the deadline for Russo to file a reply by no later than September 28, 2021.  (Dkt. No. 26.)

Russo filed the instant Motion on July 13, 2021.  (Not. of Mot.; Def.'s Mem. of Law in Supp. of Def.'s Mot. To Dismiss ("Def's. Mem.") (Dkt. No. 29).)  Plaintiff did not file a response in opposition to the Motion; Russo subsequently did not file a reply.  (*See* Dkt.)  "The Court now deems the Motion fully submitted."  *Lopes v. Westchester County*, No. 18-CV-8205, 2020 WL 7029002, at *2 (S.D.N.Y. Nov. 30, 2020).

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that while a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

4

(alteration and quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570. However, if a plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed." *Id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*,

699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).  But when a plaintiff proceeds pro se, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint." *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted).  Moreover, where, as here, a plaintiff proceeds pro se, the Court must "construe[] [his] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quotation marks omitted).  Notwithstanding a standard of review comparatively more lenient and favorable to pro se litigants, such treatment "does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and citation omitted)).

    B.  Analysis

        1.  Eleventh Amendment Immunity

To the extent Plaintiff sues Russo for monetary damages caused in his official capacity, those claims must be dismissed.[2]  The Eleventh Amendment of the United States Constitution

---

[2] "The Complaint does not specify whether [Russo] [is] sued in [his] official or individual capacit[y]." *Drayton v. Young*, No. 17-CV-5440, 2018 WL 5831324, at *1 n.1 (S.D.N.Y. Nov.

states: "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  "This withdrawal of jurisdiction effectively confers an immunity from suit."  *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993).  The Supreme Court has made clear that the Amendment's shield extends to state officials sued in their official capacity for monetary damages.  *See id.* at 142–47; *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is not different from a suit against the State itself." (citation omitted)); *Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (explaining that "absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court," a "bar [which] remains in effect when State officials are sued for damages in their official capacity"); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–06 (1984) (holding that Eleventh Amendment immunity extends to actions brought against state officials alleging violations of state law).  The Second Circuit has echoed this legal principle.  *See, e.g.*, *Farid v. Smith*, 850 F.2d 917, 921 (2d Cir. 1988) ("The [E]leventh [A]mendment bars recovery against an employee who is sued in his official capacity, but does not protect him from personal liability if he is sued in his 'individual' or 'personal' capacity."); *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993) ("To the extent a state official is sued for damages in his official capacity, such a suit is deemed to be a suit

---

7, 2018).  Because "[p]ro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest,'" *Sykes*, 723 F.3d at 403 (italics omitted) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)), the Court interprets the Complaint to bring claims against Russo in both capacities and analyzes each.

against the state, and the official is entitled to invoke the Eleventh Amendment belonging to the state.").

"New York has not waived its Eleventh Amendment immunity to suit in federal court, and Congress did not abrogate the states' immunity in enacting 42 U.S.C. § 1983." *Dubarry v. Capra*, No. 21-CV-5487, 2021 WL 3604756, at *1 (S.D.N.Y. Aug. 13, 2021) (citing *Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977)); *see also Sabino v. Dep't of Corr. & Cmty. Supervision*, No. 19-CV-7268, 2019 WL 3858622, at *1 (S.D.N.Y. Aug. 16, 2019) (same); *see also Quern v. Jordan*, 440 U.S. 332, 342 (1979) (holding that § 1983 does not override a state's Eleventh Amendment immunity).  "Because [Russo] is an employee of 'DOCCS, which is an arm of the State of New York,' Plaintiff's claims for money damages against [Russo] in [their] official capacit[ies] must be dismissed." *Gunn v. Ayala*, No. 20-CV-840, 2021 WL 5647795, at *3 (S.D.N.Y. Dec. 1, 2021) (alterations omitted) (quoting *Dubarry*, 2021 WL 3604756, at *1); *see also Severino v. Negron*, 996 F.2d 1439, 1441 (2d Cir. 1993) (per curiam) ("[I]t is clear that the Eleventh Amendment does not permit suit [under § 1983] for money damages against state officials in their official capacities.").

"[A]n individual can bring suit against a state officer in order to ensure that the officer's conduct is in compliance with federal law." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 71 n.14 (1996) (citing *Ex parte Young*, 209 U.S. 123 (1908)).  However, declaratory relief against a state or its agents is only available for ongoing or prospective violations of law.  *See Ward v. Thomas*, 207 F.3d 114, 120 (2d Cir. 2000).  Plaintiff does not assert that the alleged misconduct is ongoing or is likely to restart.  (*See generally* AC.)  Thus, the Court's hypothetical award of a declaratory judgment would be "tantamount to an award of damages for a past violation of federal law, even though styled as something else." *Papasan v. Allain*, 478 U.S. 265, 278

(1986); *see also Ward*, 207 F.3d at 120 ("A declaratory judgment is not available when the result would be a partial end run around the Eleventh Amendment's bar on retrospective awards of monetary relief." (quotation marks and alteration omitted)).  Because such relief is barred by the Eleventh Amendment, the Court dismisses Plaintiff's claims for declaratory relief against Russo in his official capacity.  *See Papasan*, 478 U.S. at 278; *Ward*, 207 F.3d at 120; *see also Pappas v. Lorintz*, 832 F. App'x 8, 12–13 (2d Cir. 2020) (summary order) (affirming district court's dismissal of claims for declaratory and injunctive relief because the plaintiff's constitutional claims were "focused purely" on past harm, which "effectively ma[de] it a suit to remedy a past violation as opposed to an ongoing one"), *cert. denied*, 141 S. Ct. 2628 (2021).

### 2.  Failure to Exhaust Administrative Remedies

In the AC, Plaintiff claims: "All remedies of exhaustion has [sic] been used, including the appeal process for the misbehavior reports, herein asserted, this application does not involve claims that can be pursued through the Inmate Grievance System, no greivances [sic] were filed."  (AC § V, ¶ 9.)  Plaintiff also writes in Section VII of the AC, titled *Plaintiff's Certification and Warnings*: "I also understand that prisoners must exhaust administrative procedures before filing an action in Federal court about prison conditions, 42 USC §1997e(a), and that my case may be dismissed if I have not exhausted administrative are [sic] required." (*Id.* § VII.)  Russo argues, however, that such grievances were, in fact, available, and Plaintiff's admission that he did not pursue such remedies forecloses Plaintiff's right to relief from the Court.  (Def.'s Mem. 3–6.)

### a.  Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [§] 1983 of this title, or any other Federal law, by a

prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  The Supreme Court has made clear that this "language is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies." *Ross v. Blake*, 578 U.S. 632, 638 (2016) (citation omitted); *see also Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."); *Woodford v. Ngo*, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory."). Moreover, the exhaustion requirement applies to "all inmate suits about prison life." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see also Johnson v. Killian*, 680 F.3d 234, 238 (2d Cir. 2012) (same).

The grievance program applicable here is the DOCCS Inmate Grievance Program ("IGP"), which provides for a "three-step grievance process." *Colon v. Annucci*, 344 F. Supp. 3d 612, 641 (S.D.N.Y. 2018).  The Second Circuit has described the process as follows:

> To initiate the process, an inmate must file a written complaint with the Inmate Grievance Resolution Committee ("IGRC"), a facility committee composed of inmates and appointed staff members.  *See* N.Y.C.R.R. § 701.4–.5. . . .  Second, the inmate can appeal an unfavorable IGRC determination to the superintendent of the facility.  *See* N.Y.C.R.R. § 701.5(c) . . . .  Finally, an inmate can appeal an unfavorable superintendent's determination to the Central Office Review Committee ("CORC").  *See* N.Y.C.R.R. § 701.7(c) . . . ; Directive No. 4040.

*Amador v. Andrews*, 655 F.3d 89, 96–97 (2d Cir. 2011); *see also Khudan v. Lee*, No. 12-CV-8147, 2016 WL 4735364, at *1 (S.D.N.Y. Sept. 8, 2016) (describing the same three-step IGP procedure), *appeal dismissed*, 2016 WL 10100723 (2d Cir. Dec. 8, 2016).  Only after completing all three steps of the IGP in a timely manner may an inmate initiate suit, *see Ross*, 578 U.S. at

10

638–39, "provided no exception to exhaustion applies," *White v. Westchester County*, No. 18-CV-730, 2018 WL 6726555, at *6 (S.D.N.Y. Dec. 21, 2018).

However, the PLRA "contains its own, textual exception to mandatory exhaustion." *Ross*, 578 U.S. at 642. As the Supreme Court has explained:

> Under § 1997e(a), the exhaustion requirement hinges on the "availab[ility]" of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones. And that limitation on an inmate's duty to exhaust . . . has real content. . . . [A]n inmate is required to exhaust those, but only those, grievance procedures that are "capable of use" to obtain "some relief for the action complained of."

*Id.* (quoting *Booth*, 532 U.S. at 738).

The Supreme Court has identified at least "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.* at 643. First, "an administrative procedure is unavailable when . . . it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* at 643–44. Third, an administrative remedy may be unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644.

### b.  Plaintiff's Administrative Exhaustion—Or Lack Thereof

As noted above, in the AC, Plaintiff claims: "All remedies of exhaustion has [sic] been used, including the appeal process for the misbehavior reports, herein asserted, this application does not involve claims that can be pursued through the Inmate Grievance System, no greivances [sic] were filed." (AC § V, ¶ 9.) Plaintiff also certified his understanding "that prisoners must

exhaust administrative procedures before filing an action in Federal court about prison conditions, 42 USC §1997e(a), and that [his] case may be dismissed if [he has] not exhausted administrative [as] required." (*Id.* § VII.)  Accordingly, the Court must review whether Plaintiff actually alleged that he filed a grievance or adequately explain why he was otherwise unable to do so.

"While the Eighth Amendment does not require 'comfortable prisons,' it does require that prison officials 'must take reasonable measures to guarantee the safety of the inmates[.]'" *Parris v. N. Y. State Dep't Corr. Servs.*, 947 F. Supp. 2d 354, 362 (S.D.N.Y. 2013) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).  Pursuant to this rule, "[p]rison officials have a particular duty to protect other inmates from 'violence at the hands of other prisoners.'" *House v. City of New York*, No. 18-CV-6693, 2020 WL 6891830, at *11 (S.D.N.Y. Nov. 24, 2020) (quoting *Farmer*, 511 U.S. at 833).  As Plaintiff conceded in the AC that he did not file a grievance, the Court must determine whether such a grievance was, in fact, permissible.

"New York permits inmates to file internal grievances as to virtually any issue affecting their confinement." *Flanagan v. Maly*, No. 99-CV-12336, 2002 WL 122921, at *1 (S.D.N.Y. Jan. 29, 2002).  New York law precludes grievances concerning the following issues:

> (1) An individual decision or disposition of any current or subsequent program or procedure having a written appeal mechanism which extends review to outside the facility shall be considered non-grievable.

> (2) An individual decision or disposition of the temporary release committee, time allowance committee, family reunion program or media review committee is not grievable.  Likewise, an individual decision or disposition resulting from a disciplinary proceeding, inmate property claim (of any amount), central monitoring case review or records review (freedom of information request, expunction) is not grievable.  In addition, an individual decision or disposition of the Commissioner, or his designees, on a foreign national prisoner application for international transfer is not grievable.

> (3) The policies, rules, and procedures of any program or procedure, including those
> above, are grievable.

N.Y. Comp. Codes R. & Regs. tit. 7, § 701.3.  Notably, this list does not include a failure to

protect claim.  To that end, there are many examples in which inmates filed, or at least attempted

to file, grievances regarding an official's alleged failure to protect, which Plaintiff claims is

unavailable.  *See, e.g.*, *Reynolds v. Stone*, No. 20-CV-686, 2021 WL 3271805, at *4 (N.D.N.Y.

May 24, 2021) ("Plaintiff did [] file three relevant grievances with [the state facility's] grievance

office . . . referencing his failure to protect claims."), *report and recommendation adopted*

*Reynolds v. Stone*, 2021 WL 3269053 (N.D.N.Y. July 30, 2021); *Ortiz v. Annucci*, No. 17-CV-

3620, 2019 WL 1438006, at *9 (S.D.N.Y. Mar. 29, 2019) (denying the defendants' motion for

summary judgment on exhaustion, finding that there was a genuine issue of fact as to whether

"the officer to whom [the plaintiff] handed [his] grievance [bringing a failure to protect claim]

failed to file it"); *Rembert v. Cheverko*, No. 12-CV-9196, 2014 WL 3384629, at *2 (S.D.N.Y.

July 10, 2014) (noting that the "plaintiff alleges that he filled out a grievance" regarding his

failure to protect claim and subsequently "attempted to file a second grievance" regarding the

same claim); *Parris*, 947 F. Supp. 2d at 359 (observing that "[t]he plaintiff filed a grievance"

alleging that the defendants, officials with DOCCS, "failed to prevent another inmate from

stabbing him"); *Smolen v. Kielisek*, No. 04-CV-6042, 2006 WL 2335168, at *6 (W.D.N.Y. Aug.

10, 2006) (discussing investigations following the filing of grievances regarding a plaintiff's

failure to protect claim); *Wilson v. Keane*, No. 02-CV-5256, 2003 WL 22132865, at *1

(S.D.N.Y. Sept. 16, 2003) (noting that the plaintiff filed a grievance claiming a failure to protect

him from assault by fellow inmates).  Thus, it cannot be said that this is a claim for which

Plaintiff cannot file a grievance.  And because Plaintiff concedes that he did not file a grievance,

(AC § V, ¶ 9), Plaintiff could only be absolved of this requirement if he alleges facts giving rise to an inference that he was prevented or thwarted in an attempt to do so.

Unfortunately for Plaintiff, he has failed to allege any facts that suggest that he attempted to file such a grievance or otherwise explain his failure to do so, including but not limited to any efforts by DOCCS personnel to inhibit his efforts.  (*See generally id*.)  Therefore, his complaint must be dismissed without prejudice until such a time as he exhausts all available administrative remedies.  *See Jhagroo v. Carty*, No. 17-CV-3416, 2019 WL 1922287, at *2 (E.D.N.Y. Apr. 29, 2019) ("Because it is undisputed that [the] [p]laintiff did not file any grievance . . . [the] [p]laintiff's claims [for failure to protect] must be dismissed for failure to exhaust the administrative remedies available to him."); *Edwards v. Pistner*, No. 10-CV-322, 2015 WL 7288697, at *5 (W.D.N.Y. Nov. 17, 2015) (granting summary judgment on a failure to protect claim because the plaintiff did "not provide any evidence indicating that he made a reasonable attempt to follow the grievance procedures pertaining to the assault incident," leading the court to "conclude that [the] [p]laintiff did not make a reasonable or timely attempt to make a complaint of failure to protect and, as such, . . . failed to show he exhausted all administrative remedies"); *Smart v. Goord*, 441 F. Supp. 2d 631, 639 (S.D.N.Y. 2006) ("[The plaintiff's] grievances did not address the facts underlying her claims of . . . failure to protect . . . . Accordingly, [the plaintiff's] claims of . . . failure to protect . . . are dismissed for failure to exhaust"); *Melo v. Combes*, No. 97-CV-204, 1998 WL 67667, at *3 (S.D.N.Y. Feb. 18, 1998) (granting prison official defendants' motion to dismiss because "[t]he plaintiff admits that he did not file a grievance [regarding his failure to protect claim] pursuant to the prison grievance procedures"); *Midgette v. Doe*, No. 96-CV-6790, 1997 WL 634280, at *1 (S.D.N.Y. Oct. 15, 1997) (dismissing without prejudice a prisoner's § 1983 suit alleging a failure to protect for lack

14

of exhaustion of "the available administrative remedies within the New York State Department of Correctional Services").

### 3.  Personal Involvement

The Court reviews another one of Russo's arguments: whether Plaintiff adequately alleged Russo's personal involvement in Plaintiff's circumstances.  Indeed, even if Plaintiff had exhausted his administrative remedies, Plaintiff failed to allege Russo's personal involvement, necessitating dismissal.

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under [42 U.S.C.] § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation."  *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013).  To establish personal involvement, a plaintiff must show that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Id*. at 139 (quotation marks and emphases omitted).  "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676. Therefore, Plaintiff must plausibly allege that Russo's actions fall into one of the five categories identified above.  *See Lebron v. Mrzyglod*, No. 14-CV-10290, 2017 WL 365493, at *4 (S.D.N.Y. Jan. 24, 2017) (holding that the five categories "still control[] with respect to claims that do not require a showing of discriminatory intent" post-*Iqbal*).

As stated above, it is well-established that pursuant to the Eighth Amendment, "prison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833 (alteration and citation omitted). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834. Thus, "[t]o state a claim under the Eighth Amendment on the basis that a defendant has failed to prevent harm, a plaintiff must plead both (a) conditions of confinement that objectively pose an unreasonable risk of serious harm to their current or future health, and (b) that the defendant acted with 'deliberate indifference.'" *Vega*, 963 F.3d at 273 (quoting *Farmer*, 511 U.S. at 834); *see also Randle v. Alexander*, 960 F. Supp. 2d 457, 473–74 (S.D.N.Y. 2013) (adopting the same two-prong framework).

"To satisfy the first prong, often referred to as the 'objective' prong, Plaintiff must 'establish the deprivation of a basic human need such as reasonable safety,' due to [Russo's] 'creation of a substantial risk of harm.'" *Bacon v. Evans*, No. 20-CV-6337, 2021 WL 5643038, at *4 (S.D.N.Y. Dec. 1, 2021) (quoting *Bouknight v. Shaw*, No. 08-CV-5187, 2009 WL 969932, at *4 (S.D.N.Y. Apr. 6, 2009)). To satisfy the second prong, often referred to as the "subjective" prong, Plaintiff must allege that Russo "acted maliciously and sadistically to cause harm or, at least, was deliberately indifferent to an excessive risk to inmate health or safety." *Id.* (quoting *Bouknight*, 2009 WL 969932, at *4).

Again, putting aside the aforementioned exhaustion of remedies concerns, the Court assesses the scope and nature of Russo's involvement to determine whether Plaintiff plausibly alleged a failure to protect claim.

Plaintiff's theory against Russo is that he is liability as the supervisor of Green Haven. (*See* AC Ex. A at 6, ¶ 19 (stating that "Russo allowed and condoned an unconstitutional policy or

custom by permitting inadequate supervision and training of Correctional Officers").)  In other

contexts, it has been observed that "[a] general allegation that [a defendant] failed to train

subordinates  . . . is insufficient to establish personal involvement[] absent some factual

connection between their failure to train and the harm that eventually befell [the] plaintiff."

*Samuels v. Fischer*, 168 F. Supp. 3d 625, 639 (S.D.N.Y. 2016) (collecting cases).  Pursuant to

this reasoning, courts in the Second Circuit have repeatedly dismissed § 1983 actions alleging

that supervisors failed to protect inmates where inmate-plaintiffs "make[] no specific factual

allegations" connecting the supervisor to said conduct.  *Wilkins v. Poole*, 706 F. Supp. 2d 314,

318 (W.D.N.Y. 2010) (collecting cases).  Absent alleging such a connection between the

supervisor and the corrections officers, a failure to protect claim against the former fails to

"show[] that the supervisor acted with deliberate indifference," *Stephens v. Venettozzi*, No. 13-

CV-5779, 2016 WL 929268, at *12 (S.D.N.Y. Feb. 24, 2016), *report and recommendation

adopted sub nom. Stephens v. Venetozzi*, 2016 WL 1047388 (S.D.N.Y. Mar. 10, 2016), *and

report and recommendation adopted*, 2016 WL 4272376 (S.D.N.Y. Aug. 5, 2016), meaning a

plaintiff could not meet the subjective standard, thereby foreclosing such a claim.

The bar for connecting supervisors with prison officials' conduct to plausibly state a

claim is not perilously high.  For example, such claims need only allege that a plaintiff made

supervisors aware of a known threat, that the plaintiff "feared for his safety," and that said

supervisors "failed to protect [the plaintiff] from harm."  *Braxton/Obed-Edom v. City of New

York*, No. 17-CV-199, 2018 WL 11316020, at *8 (S.D.N.Y. Dec. 20, 2018), *report and

recommendation adopted sub nom. B. Braxton/Obed-Edom v. City of New York*, 368 F. Supp. 3d

729 (S.D.N.Y. 2019); *see also Taylor v. City of New York*, No. 16-CV-7857, 2018 WL 1737626,

at *8–9 (S.D.N.Y. Mar. 27, 2018) (denying a motion to dismiss from supervisory defendants

where the plaintiff alleged that they knew about repeated incidents of gang violence and failed to act, which was sufficient to allege personal involvement on failure to protect claim); *cf. Haywood v. Woods*, No. 01-CV-225, 2007 WL 1834641, at *10 (N.D.N.Y. June 25, 2007) (observing that "the very essence of an Eighth Amendment failure to protect a claim" is "where the letters alerting prison officials of an inmate's plight are directed to local prison officials who plainly are, one may properly infer, positioned to take steps to protect the prison inmate" but fail to do so).

Plaintiff's three-fold allegations with respect to Russo offer no specific allegations connecting Russo's actions to the harms allegedly perpetrated against Plaintiff.  First, in his initial Complaint's Claims for Relief (which Plaintiff attaches to the AC as an exhibit and requests to incorporate), Plaintiff alleges that Russo "was delegated authority to implement safety and security Policy, Procedure and Practice" and that he "allowed and condoned an unconstitutional policy or custom by permitting inadequate supervision and training of Correctional Officers."  (AC Ex. A at 6, ¶ 19.)  Second, Plaintiff claims, Russo "failed to insure [sic] that correctional officers were instructed on the proper Policies, Procedures and Practices in searching inmates and/or passing said inmates through a metal detector to insure [sic] each inmate did not possess weapons."  (*Id.* at Ex. A at 6, ¶ 20.)  Finally, Plaintiff claims that Russo "had actual notice of the inadequate level of training and/or experienced staff in the facility, having just received dozens of new employees from insure [sic] these officers and others were properly trained."  (*Id.* at Ex. A at 6, ¶ 21.)

Plaintiff offers no support whatsoever for these conclusory allegations, yet to plausibly allege Russo's involvement and survive a motion to dismiss, Plaintiff would have had to articulate a theory as to how, specifically, Russo "knew of a substantial risk prior to [either]

attack and failed to take reasonable measures to abate the harm." *Stewart v. Fisher*, No. 11-CV-2184, 2011 WL 6153084, at *6 (S.D.N.Y. Dec. 12, 2011); *see also Rahman v. Fischer*, No. 08-CV-4368, 2010 WL 1063835, at *5 (S.D.N.Y. Mar. 22, 2010) ("Without alleging that [the supervisor defendant] was personally on notice of a condition that could reasonably lead to an assault of an inmate like [the plaintiff], [the plaintiff] has failed to state a claim against [the supervisor defendant]."); *Coronado v. Goord*, No. 99-CV-1674, 2000 WL 1372834, at *5 (S.D.N.Y. Sept. 25, 2000) ("Absent a showing that [the supervisor] [d]efendants . . . actually knew of a substantial risk of serious harm . . . [the plaintiff] cannot make out a § 1983 claim against them for failure to protect."); *Anderson v. Sullivan*, 702 F. Supp. 424, 428 (S.D.N.Y. 1988) ("A prison superintendent generally is not liable for an isolated incident about which he had no notice."); *cf. Taylor*, 2018 WL 1737626, at *9 (holding that the "plaintiff adequately [pled] [the supervisor] defendants' personal involvement based on the allegations that they created policies and/or allowed policies to continue under which unconstitutional practices occurred, failed to remedy wrongs that were brought to their attention, and failed to act on information indicating that such violations were occurring").[3]

---

[3] Indeed, beyond failing to allege Russo's involvement, Plaintiff failed to allege particular facts to establish that any prison officials—Russo or otherwise—were actually aware of the specific danger Inmate Arnold posed, even following the first altercation, which calls into question whether Plaintiff alleged an Eighth Amendment claim at all. *See, e.g.*, *Blandon v. Capra*, No. 17-CV-65, 2017 WL 5624276, at *8 (S.D.N.Y. Nov. 20, 2017) ("[T]he [c]omplaint is devoid of any allegations that any [d]efendant specifically knew that [the plaintiff's attacker] was infected with HIV or Hepatits C [sic], or that he had a propensity to assault other inmates, or that [the] [p]laintiff personally was in danger of being assaulted by [the attacker]. The [c]omplaint therefore fails to allege that [the] [d]efendants were 'aware of facts from which the inference could be drawn that' [the attacker] specifically posed a substantial risk of harm to [the] [p]laintiff, or that [the] [d]efendants in fact drew such an inference." (emphasis and citation omitted)); *Thomas v. Demeo*, No. 15-CV-9559, 2017 WL 3726759, at *8 (S.D.N.Y. Aug. 28, 2017) ("Here, [the] [p]laintiff has merely alleged that he was celled with an inmate who was known to be violent. . . . Given that inmates in federal prison are often incarcerated specifically

Having failed to allege Russo's personal involvement or knowledge of the potential danger Plaintiff faced, Plaintiff's claims could not stand.  Therefore, the claims against Russo would be subject to dismissal notwithstanding Plaintiff's failure to exhaust his administrative remedies.

### 4.  State Law Claims

"Finally, to the extent Plaintiff seeks to assert state law claims [arising out of the events at issue], they are barred by New York Correction Law § 24, which provides that '[n]o civil action shall be brought in any court of the state . . . against any officer or employee of [DOCCS] . . . in his or her personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of employment and in the discharge of duties by such officer or employee.'"  *McCray v. Lee*, No. 16-CV-1730, 2021 WL 4392280, at *11 (S.D.N.Y.

---

because of some record of violence, it can hardly be said that [the] [p]laintiff's comments to [the corrections officer defendant] warranted a need for further protection, especially in the absence of any history of violence between [the cellmate] and [the] [p]laintiff . . . . Accordingly, [the defendant] did not consciously disregard any substantial risk to [the] [p]laintiff's safety and, as such, his conduct does not rise to the level of an Eighth Amendment violation." (emphasis omitted)); *Vincent v. Sitnewski*, 117 F. Supp. 3d 329, 337 (S.D.N.Y. 2015) (dismissing claims against prison officials where the plaintiff failed to allege that the defendants "had actual or constructive knowledge that [the plaintiff], in particular, faced harm in the prison yard"); *Parris*, 947 F. Supp. 2d at 363 (dismissing failure to protect claim because the complaint failed to allege that "the defendants knew of a prior altercation between the plaintiff and his attacker, or of threats that had been made against the plaintiff"); *cf. Scott v. Westchester County*, 434 F. Supp. 3d 188, 199–201 (S.D.N.Y. 2020) (finding that the plaintiff had plausibly alleged a claim against corrections officer defendants where the plaintiff asserted that he was previously attacked by gang member, that he informed a senior prison officer defendant that gang members were trying to kill him, that an order of protection had been forwarded to several other corrections officer defendants, but that said defendants placed him into general population, and that he was attacked by gang members within minutes); *accord Rodriguez v. Goins*, No. 18-CV-1380, 2020 WL 6150984, at *4 (N.D.N.Y. Aug. 17, 2020) ("In order for a corrections officer to be held liable for failing to protect an inmate from another inmate, the corrections officer must have been aware of a 'clear and specific threat' of harm to that inmate." (quoting *Velez v. City of New York*, No. 17-CV-9871, 2019 WL 3495642, at *4 (S.D.N.Y. Aug. 1, 2019))), *report and recommendation adopted*, 2020 WL 6146597 (N.D.N.Y. Oct. 20, 2020).

Sept. 24, 2021) (alterations in original) (quoting N.Y. Corr. Law § 24); *see also Baker v. Coughlin*, 77 F.3d 12, 15 (2d Cir. 1996) (holding that § 24 applies to claims in federal court); *Gunn*, 2021 WL 5647795, at *8 (same).  "Courts in the Second Circuit have long held that [§] 24 precludes a plaintiff from raising state law claims in federal court against state employees in their personal capacities for actions arising within the scope of their employment."  *Davis v. McCready*, 283 F. Supp. 3d 108, 123–24 (S.D.N.Y. 2017) (collecting cases).  New York Corrections Law § 24 applies here, given that the actions in question "arose as a result of [Russo] discharging [his] duties as [a] correctional officer[]."  *McCray*, 2021 WL 4392280, at *11 (quoting *Boyd v. Selmer*, 842 F. Supp. 52, 57 (N.D.N.Y. 1994)).  Finally, there is no refuge in the New York State constitution, which does not create a private right of action "where . . . remedies are available under § 1983."  *Id.* (alteration in original) (quoting *Hershey v. Goldstein*, 938 F. Supp. 2d 491, 520 (S.D.N.Y. 2013)).  Therefore, the Court grants Russo's Motion with respect to all claims Plaintiff makes sounding in state law.[4]

## III.  Conclusion

For the foregoing reasons, Russo's Motion is granted.  In light of Plaintiff's pro se status, and because this is the first adjudication of Plaintiff's claims on the merits, the dismissal is without prejudice.  *See Terry v. Incorporated Village of Patchogue*, 826 F.3d 631, 633 (2d Cir. 2016) (explaining that "district judges should, as a general matter, liberally permit pro se litigants

---

[4] Russo also argues that he is entitled to qualified immunity. (Def.'s Mem. 1; *see id*. at 8–9.)  The Court will not opine on whether he is entitled to qualified immunity, however, because Plaintiff has not plausibly pled that he is entitled to relief.  *See Posr v. City of New York*, No. 10-CV-2551, 2013 WL 2419142, at *10 n.8 (S.D.N.Y. June 4, 2013) ("Because [the defendant] did not violate [the] [p]laintiff's [constitutional] rights, there is no need to consider if [the defendant] is entitled to qualified immunity."), *aff'd sub nom. Posr v. Ueberbacher*, 569 F. App'x 32 (2d Cir. 2014).

to amend their pleadings" unless "amendment would be futile").  Additionally, as indicated in Footnote 1, CO Defendants did not join the instant Motion and have not yet appeared in this Action.  However, the Court finds that dismissal of Plaintiff's claims against the CO Defendants is nonetheless proper in light of the aforementioned grounds for dismissal.  *See supra* II.B.  As such, Plaintiff has 30 days to explain to the Court in a filing why his claims against the remaining Defendants should not also be dismissed.  *See* 28 U.S.C. § 1915(e)(2)(B)(ii) ("[T]he court shall dismiss [a] case [proceeding IFP] at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted.").

Should Plaintiff choose to file an amended complaint as to Russo, he must do so within 30 days of this Opinion, addressing the deficiencies identified herein.  The amended complaint will replace, not supplement, the complaint currently before the Court.  It therefore must contain *all* of the claims and factual allegations Plaintiff wishes the Court to consider.  If Plaintiff fails to abide by the 30-day deadline, this Action could be dismissed with prejudice.

The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. No. 28), and to mail a copy of this Opinion & Order to Plaintiff's address listed on the docket. SO ORDERED.

Dated:    March 15, 2022
           White Plains, New York

_____
       KENNETH M. KARAS
      United States District Judge