UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LEONARDO VALDE-CRUZ,

                                    Plaintiff,

        v.

ANTHONY RUSSO, *et al.*,

                                    Defendants.

No. 20-CV-9240 (KMK)

<u>OPINION & ORDER</u>

<u>Appearances:</u>

Leonardo Valde-Cruz
Stormville, NY
*Pro Se Plaintiff*

Ian Ramage, Esq.
New York State Office of the Attorney General
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

        Leonardo Valde-Cruz ("Plaintiff"), proceeding pro se, brings this Action against

Correctional Officers Gregory Reyes ("Reyes"), Robert Stark ("Stark"), and Othello Coleman

("Coleman"; together with Reyes and Stark, "CO Defendants"), and Deputy Superintendent of

Security at Green Haven Correctional Facility ("Green Haven") Anthony Russo ("Russo";

collectively, "Defendants"), alleging various claims, under 42 U.S.C. § 1983 and state law, in

connection with two occasions during which Plaintiff was attacked by another incarcerated

individual and another instance when his cell was set on fire.  (*See generally* Second Amend.

Compl. ("SAC") (Dkt. No. 42).)  Before the Court is Russo's Motion to Dismiss (the "Motion")

Plaintiff's SAC in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (*See* Not. of Mot. (Dkt. No. 46).)[1]  For the following reasons, the Motion is granted.

## I.  Background

Because Plaintiff's SAC alleges largely identical facts to his Amended Complaint ("AC") and the factual and procedural background of this Action has been summarized in this Court's previous Opinion & Order on the Motion to Dismiss the Amended Complaint (the "2022 Opinion"), the Court assumes familiarity with the general issues in dispute. (*See* 2022 Opinion (Dkt. No. 30).)[2]  The Court supplements the factual history with Plaintiff's newly alleged facts and the procedural history of this case since the issuance of the 2022 Opinion.

### A.  Factual Background

The following facts are drawn from Plaintiff's SAC and associated filings, all of which are assumed to be true for the purpose of resolving the instant Motion.  *See Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam).

On July 6, 2020, at approximately 9:15PM, while Plaintiff was quarantined in the second-floor hospital ward, correctional officers observed flames and smoke coming from Plaintiff's cell.  (SAC ¶ 27.)  Plaintiff alleges that a non-defendant correctional officer that extinguished the fire, smelled and observed hand sanitizer, which was highly flammable, in Plaintiff's cell.  (*Id.* ¶ 28).  In addition, Plaintiff contends that another non-defendant correctional officer, among

---

[1] As of the date of this Opinion and Order, there is no indication on the docket that there was a summons issued as to any of the CO Defendants or that any one of them has been served. (*See generally* Dkt.)  As such, the CO Defendants have not appeared in this Action and have not joined this Motion.

[2] This Opinion is published as *Valde-Cruz v. Russo*, No. 20-CV-9240, 2022 WL 785169, at *1 (S.D.N.Y. Mar. 15, 2022).

other unnamed individuals, removed Plaintiff's property from the cell to an unknown location. (*Id.* ¶ 29.)  Following an investigation, a report indicated that the fire was an intentional act and that "an unknown inmate used NYS [c]lean [h]and [s]anitizer to start th[e] fire." (*Id.* Ex. AA 2–3.)  Plaintiff claims that the fire was in response to the original incident in this case. (*Id.* ¶ 30.)

On August 10, 2020, Plaintiff filed an Inmate Property Claim Form, which was the first opportunity Plaintiff had to do so. (*Id.* ¶ 31; *id.* Ex. CC.)  On October 20, 2020, Plaintiff's claim was denied. (*Id.* ¶ 32.)  Plaintiff asserts that his claim was denied without sufficient reasoning, especially in light of the fact that there was photographic proof that Plaintiff's claimed property was damaged. (*Id.*)

Plaintiff alleges that the fire was a "culmination of the prior [incidents]" in this case, and therefore, the fire is the fault of prison officials who should have prevented harm to Plaintiff and his property. (*Id.* ¶ 34.)  Further, Plaintiff contends that the conduct and action of the State of New York Department of Corrections and Community Supervision ("DOCCS"), under the guidance of facility officials, caused Plaintiff intentional injury and loss of property. (*Id.* ¶ 35.)

B.  Procedural History

In the 2022 Opinion, dated March 15, 2022, the Court granted Defendant's motion and dismissed Plaintiff's Amended Complaint, finding that Plaintiff "failed to allege any facts that suggest that he attempted to file such a grievance or otherwise explain his failure to do so." *Valde-Cruz*, 2022 WL 785169, at *7.  The Court gave Plaintiff thirty days to file an amended complaint. *Id.* at *11.  Following two extensions to file an amended complaint, (*see* Dkt. No. 32, 34), the Court issued an Order to Show Cause as to why the case should not be dismissed for failure to prosecute, (Dkt. No. 35).  Plaintiff did not respond to the Order to Show Cause or file

and amended complaint.  (*See generally* Dkt.)  As such, the Court issued an Order of Dismissal

on August 22, 2022.  (Dkt No. 36.)

On February 10, 2023, Plaintiff requested to amend his complaint, which the Court

granted.  (Dkt No. 37.)  Plaintiff subsequently requested, and the Court granted, additional time

to amend.  (Dkt Nos. 38–41.)  On June 21, 2023, Plaintiff eventually filed his SAC.  (*See* SAC.)

On June 28, 2023, Russo filed a pre-motion letter, requesting a conference in anticipation of

filing a Motion to Dismiss the SAC.  (Dkt No. 43.)  In lieu of scheduling a conference, the Court

set a briefing schedule for the Motion to Dismiss.  (Dkt. No. 44.)

On August 10, 2023, Russo filed the instant Motion.  (*See* Not. of Mot.; Mem. of Law in

Supp. of Def.'s Mot. to Dismiss ("Def.'s Mem.") (Dkt. No. 47).)  Plaintiff filed an Opposition on

September 25, 2023.  (*See* Mem. of Law in Opp. to Def.'s Mot. to Dismiss ("Pl.'s Opp.") (Dkt.

No. 48).)  On October 10, 2023, Russo filed his Reply.  (*See* Reply Mem. of Law in Further

Supp. of Def.'s Mot. to Dismiss ("Def.'s Reply") (Dkt. No. 51).)

## II.  Discussion

### A.  Standard of Review

#### 1.  Rule 12(b)(1)

"A federal court has subject matter jurisdiction over a cause of action only when it has

authority to adjudicate the cause pressed in the complaint."  *Gunn v. Malani*, No. 20-CV-2681,

2023 WL 2664805, at *3 (S.D.N.Y. Mar. 28, 2023) (quoting *Bryant v. Steele*, 25 F. Supp. 3d

233, 241 (E.D.N.Y. 2014)).  "Determining the existence of subject matter jurisdiction is a

threshold inquiry[,] and a claim is properly dismissed for lack of subject matter jurisdiction

under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to

adjudicate it."  *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal

quotation marks and citation omitted), *aff'd*, 561 U.S. 247 (2010); *United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014) (describing subject matter jurisdiction as the "threshold question" (internal quotation marks and citation omitted)).

The Second Circuit has explained that a challenge to subject-matter jurisdiction pursuant to Rule 12(b)(1) may be facial or fact-based. *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016). When a defendant raises a facial challenge to standing based solely on the complaint and the documents attached to it, "the plaintiff has no evidentiary burden" and a court must determine whether the plaintiff asserting standing "alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." *Id.* (alterations adopted) (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)). In making such a determination, a court must accept as true all allegations in the complaint and draw all inferences in the plaintiff's favor. *Id.* at 57. However, where a Rule 12(b)(1) motion is fact-based and a defendant proffers evidence outside the pleadings, a plaintiff must either come forward with controverting evidence or rest on the pleadings if the evidence offered by the defendant is immaterial. *See Katz v. Donna Karan Co., LLC*, 872 F.3d 114, 119 (2d Cir. 2017). If the extrinsic evidence presented by the defendant is material and controverted, the Court must make findings of fact in aid of its decision as to standing. *See Carter*, 822 F.3d at 57.

### 2. Rule 12(b)(6)

The Supreme Court has held that while a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration adopted) (internal quotation marks and citation omitted). Indeed, Rule 8 of the

Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration adopted) (internal quotation marks and citation omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570. However, if a plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed." *Id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" (alteration adopted) (internal quotation marks and citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*,

699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks and citation omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).  But when a plaintiff proceeds pro se, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (internal quotation marks and citation omitted), including "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted). Moreover, where, as here, a plaintiff proceeds pro se, the Court must "construe[] [his] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks and citation omitted).  Notwithstanding a standard of review comparatively more lenient and favorable to pro se litigants, such treatment "does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks and citation omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics omitted) (internal quotation marks and citation omitted)).

B.  Analysis

      1.  Identical Allegations

With respect to the factual allegations and claims in the AC, Plaintiff does not amend them in any way in the SAC.  (*Compare* SAC ¶¶ 1–25, *with* AC ¶¶ 1–25.)  Because those allegations are identical, the Court's analysis from the 2022 Opinion, as to Plaintiff's claims concerning these identical allegations, applies with equal force and the Court dismisses those claims for the same reasons stated in the 2022 Opinion.  *See Valde-Cruz*, 2022 WL 785169, at *3–10; *see also Gonzalez v. Tejada*, No. 23-CV-9027, 2024 WL 167202, at *2 (S.D.N.Y. Jan. 16, 2024) ("Because the amended complaint is virtually identical to the original complaint, the Court dismisses the amended complaint . . . for the reasons stated in its [previous] order."); *Chavez v. Gutwein*, No. 20-CV-342, 2022 WL 1487781, at *7 (S.D.N.Y. May 11, 2022) (dismissing "the [s]econd [a]mended [c]omplaint for the same reasons that it dismissed the nearly identical [a]mended [c]omplaint"); *Weslowski v. Zugibe*, 96 F. Supp. 3d 308, 316 (S.D.N.Y.) ("The mere filing of an [a]mended [c]omplaint does not entitle [p]laintiff to relitigate his claims absent new factual allegations.  Because the [a]mended [c]omplaint . . . is in large part identical to [p]laintiffs' first [c]omplaint, the law of the case doctrine counsels against reconsideration of the [c]ourt's [previous] dismissal of the first [c]omplaint."), *aff'd*, 626 F. App'x 20 (2d Cir. 2015) (summary order).

      2.  New Allegations

In addition to repeating the allegations from his AC in the SAC, Plaintiff supplements the SAC with some new allegations concerning the fire in Plaintiff's cell and the subsequent damage to his property.  (*See* SAC ¶ 26–38.)  Russo argues that any claim against him regarding such allegations cannot proceed due to, inter alia, Plaintiff's lack of standing, Plaintiff's failure to

state a claim against Russo, and Russo's entitlement to qualified immunity.  (*See* Def.'s Mem. 5–12.)  The Court addresses Russo's arguments only to the extent necessary to resolve the Motion.

### a.  Eleventh Amendment Immunity

To the extent Plaintiff sues Russo for monetary damages caused in his official capacity, those claims must be dismissed.  The Eleventh Amendment of the United States Constitution states: "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  "This withdrawal of jurisdiction effectively confers an immunity from suit."  *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993).  The Supreme Court has made clear that the Amendment's shield extends to state officials sued in their official capacity for monetary damages.  *See id.* at 142–47; *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the State itself." (citation omitted)); *Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (explaining that "absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court," a "bar [which] remains in effect when State officials are sued for damages in their official capacity"); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–06 (1984) (holding that Eleventh Amendment immunity extends to actions brought against state officials alleging violations of state law).  The Second Circuit has echoed this legal principle.  *See, e.g.*, *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993) ("To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh

Amendment immunity belonging to the state."); *Farid v. Smith*, 850 F.2d 917, 921 (2d Cir. 1988) ("The [E]leventh [A]mendment bars recovery against an employee who is sued in his official capacity, but does not protect him from personal liability if he is sued in his 'individual' or 'personal' capacity.").

"New York has not waived its Eleventh Amendment immunity to suit in federal court, and Congress did not abrogate the states' immunity in enacting 42 U.S.C. § 1983." *Dubarry v. Capra*, No. 21-CV-5487, 2021 WL 3604756, at *1 (S.D.N.Y. Aug. 13, 2021) (citing *Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977)); *see also Quern v. Jordan*, 440 U.S. 332, 342–43 (1979) (holding that Section 1983 does not override a state's Eleventh Amendment immunity); *Sabino v. Dep't of Corr. & Cmty. Supervision*, No. 19-CV-7268, 2019 WL 3858622, at *1 (S.D.N.Y. Aug. 16, 2019) (same). "Because [Russo] is an employee of 'DOCCS, which is an arm of the State of New York,' Plaintiff's claims for money damages against [Russo] in his official capacity must be dismissed." *Gunn v. Ayala*, No. 20-CV-840, 2021 WL 5647795, at *3 (S.D.N.Y. Dec. 1, 2021) (alterations adopted) (citation omitted) (quoting *Dubarry*, 2021 WL 3604756, at *1); *see also Severino v. Negron*, 996 F.2d 1439, 1441 (2d Cir. 1993) (per curiam) ("[I]t is clear that the Eleventh Amendment does not permit suit [under Section 1983] for money damages against state officials in their official capacities.").

"[A]n individual can bring suit against a state officer in order to ensure that the officer's conduct is in compliance with federal law." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 71 n.14 (1996) (citing *Ex parte Young*, 209 U.S. 123 (1908)). However, declaratory relief against a state or its agents is only available for ongoing or prospective violations of the law. *See Ward v. Thomas*, 207 F.3d 114, 120 (2d Cir. 2000). Plaintiff does not assert that the alleged misconduct is ongoing or is likely to restart. (*See generally* SAC.) Thus, the Court's hypothetical award of a

declaratory judgment would be "tantamount to an award of damages for a past violation of federal law, even though styled as something else." *Papasan v. Allain*, 478 U.S. 265, 278 (1986); *see also Ward*, 207 F.3d at 120 ("A declaratory judgment is not available when the result would be a partial end run around the Eleventh Amendment's bar on retrospective awards of monetary relief." (alteration adopted) (internal quotation marks and citation omitted)).  Because such relief is barred by the Eleventh Amendment, the Court dismisses Plaintiff's claims for declaratory relief against Russo in his official capacity.  *See Papasan*, 478 U.S. at 278; *Ward*, 207 F.3d at 120; *see also Pappas v. Lorintz*, 832 F. App'x 8, 12–13 (2d Cir. 2020) (summary order) (affirming district court's dismissal of claims for declaratory and injunctive relief because the plaintiff's constitutional claims were "focused purely" on past harm, which "effectively ma[de] it a suit to remedy a past violation as opposed to an ongoing one"), *cert. denied*, 141 S. Ct. 2628 (2021).

### b.  Failure to Exhaust Administrative Remedies

As to Plaintiff's Section 1983 claims brought against Russo in his individual capacity, Russo argues that "Plaintiff's claims should be dismissed because Plaintiff failed to exhaust his administrative remedies under the Prison Litigation Reform Act ('PLRA') prior to bringing this action."  (Def.'s Mem. at 5.)  The Court agrees.

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under [S]ection 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The Supreme Court has made clear that this "language is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies."  *Ross v. Blake*, 578 U.S.

632, 638–39 (2016) (citation omitted); *see also Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There

is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot

be brought in court."); *Woodford v. Ngo*, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to

the discretion of the district court, but is mandatory.").  Moreover, the exhaustion requirement

applies to "all inmate suits about prison life."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see*

*also Johnson v. Killian*, 680 F.3d 234, 238 (2d Cir. 2012) (same).  Although "failure to exhaust

administrative remedies is an affirmative defense and 'inmates are not required to specially plead

or demonstrate exhaustion in their complaints,'" *Pearsall v. Sposato*, No. 16-CV-6733, 2018 WL

1611385, at *2 (E.D.N.Y. Mar. 31, 2018) (quoting *Jones*, 549 U.S. at 216), "[d]ismissal for

failure to exhaust is appropriate when 'on the face of the complaint, it is clear that a plaintiff did

not exhaust administrative remedies,'" *id.* (quoting *Abreu v. Schriro*, No. 14-CV-6418, 2016 WL

3647958, at *8 (S.D.N.Y. July 1, 2016)).  The grievance program applicable here is the DOCCS

Inmate Grievance Program ("IGP"), which provides for a "three-step grievance process."  *Colon*

*v. Annucci*, 344 F. Supp. 3d 612, 641 (S.D.N.Y. 2018).  The Second Circuit has described the

process as follows:

> To initiate the process, an inmate must file a written complaint with the Inmate
> Grievance Resolution Committee ("IGRC"), a facility committee composed of
> inmates and appointed staff members.  *See* N.Y.C.R.R. § 701.4–.5. . . . Second, the
> inmate can appeal an unfavorable IGRC determination to the superintendent of the
> facility.  *See* N.Y.C.R.R. § 701.5(c). . . . Finally, an inmate can appeal an
> unfavorable superintendent's determination to the Central Office Review
> Committee ("CORC").  *See* N.Y.C.R.R. § 701.7(c) . . . ; Directive No. 4040.

*Amador v. Andrews*, 655 F.3d 89, 96–97 (2d Cir. 2011); *see also Khudan v. Lee*, No. 12-CV-

8147, 2016 WL 4735364, at *1 (S.D.N.Y. Sept. 8, 2016) (describing the same three-step IGP

procedure), *appeal dismissed*, 2016 WL 10100723 (2d Cir. Dec. 8, 2016).  Only after completing

all three steps of the IGP in a timely manner may an inmate initiate suit, *see Ross*, 578 U.S. at

638–39, "provided no exception to exhaustion applies," *White v. Westchester County*, No. 18-CV-730, 2018 WL 6726555, at *6 (S.D.N.Y. Dec. 21, 2018).

However, the PLRA "contains its own, textual exception to mandatory exhaustion." *Ross*, 578 U.S. at 642.  As the Supreme Court has explained:

> Under [Section] 1997e(a), the exhaustion requirement hinges on the "availability" of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones.  And that limitation on an inmate's duty to exhaust . . . has real content. . . . [A]n inmate is required to exhaust those, but only those, grievance procedures that are "capable of use" to obtain "some relief for the action complained of."

*Id.* (alteration adopted) (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)).

The Supreme Court has identified at least "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.* at 643.  First, "an administrative procedure is unavailable when . . . it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.*  Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use.  In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* at 643–44.  Third, an administrative remedy may be unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644.

Here, Plaintiff claims: "[a]ll remedies of exhaustion has [sic] been used, including the appeal process for the misbehavior reports, herein asserted, this application does not involve claims that can be pursued through the Inmate Grievance System, no greivances [sic] were filed."  (SAC ¶ 9.)  Plaintiff also writes in Section VII of the SAC, titled Plaintiff's Certification and Warnings: "I also understand that prisoners must exhaust administrative procedures before filing an action in Federal court about prison conditions, 42 U[.]S[.]C[.] § 1997e(a), and that my

case may be dismissed if I have not exhausted administrative are [sic] required." (*Id.* § VII.)  In addition, Plaintiff asserts that on August 10, 2020, Plaintiff filed an Inmate Property Claim Form, which was denied on October 20, 2020.  (*Id.* ¶¶ 31–32.)

Based on this record, the Court concludes that Plaintiff has conceded that he did not file any grievances.  (*See id.* ¶ 9.)  Rather, the only action Plaintiff alleges to have taken was filing a property claim form on August 10, 2020, (*id.* ¶ 31; *id.* Ex. CC), which not a part of the IGP, *see Amador*, 655 F.3d at 96–97.  Moreover, Plaintiff does not assert any plausible allegations to demonstrate that he was unable to file a grievance such as to excuse him from the mandatory exhaustion requirement.  (*See generally* SAC.)  Plaintiff does allege, in a conclusory fashion, that his SAC "does not involve claims that can be pursued through the Inmate Grievance System." (*Id.* ¶ 9.)  However, the law belies such a contention.  "New York permits inmates to file internal grievances as to virtually any issue affecting their confinement."  *Flanagan v. Maly*, No. 99-CV-12336, 2002 WL 122921, at *1 (S.D.N.Y. Jan. 29, 2002).  New York law precludes grievances concerning the following issues:

> (1) An individual decision or disposition of any current or subsequent program or procedure having a written appeal mechanism which extends review to outside the facility shall be considered non-grievable.
>
> (2) An individual decision or disposition of the temporary release committee, time allowance committee, family reunion program or media review committee is not grievable.  Likewise, an individual decision or disposition resulting from a disciplinary proceeding, inmate property claim (of any amount), central monitoring case review or records review (freedom of information request, expunction) is not grievable.  In addition, an individual decision or disposition of the Commissioner, or his designees, on a foreign national prisoner application for international transfer is not grievable.
>
> (3) The policies, rules, and procedures of any program or procedure, including those above, are grievable.

N.Y. Comp. Codes R. & Regs. tit. 7, § 701.3.

14

It is not exactly clear what kind of federal claim Plaintiff attempts to bring against Russo regarding the fire incident and the subsequent destruction of his property. However, liberally construing Plaintiff's SAC to allege a failure to protect and destruction of property claim, (*see* SAC ¶ 34 (stating that the "[fire] incident is the . . . is the fault of the [s]tate [o]fficials, where they could have prevented the harm to the person and property of [Plaintiff]")), the above list does not preclude such claims from the IGP. *See* N.Y. Comp. Codes R. & Regs. tit. 7, § 701.3. In fact, there are many examples of courts assessing inmates' filing of grievances, or lack thereof, for such claims.. *See, e.g.*, *Reynolds v. Stone*, No. 20-CV-686, 2021 WL 3271805, at *4 (N.D.N.Y. May 24, 2021) ("Plaintiff did [] file three relevant grievances with [the state facility's] grievance office . . . referencing his failure to protect claims."), *report and recommendation adopted*, 2021 WL 3269053 (N.D.N.Y. July 30, 2021); *Ortiz v. Annucci*, No. 17-CV-3620, 2019 WL 1438006, at *9 (S.D.N.Y. Mar. 29, 2019) (denying the defendants' motion for summary judgment on exhaustion, finding that there was a genuine issue of fact as to whether "the officer to whom [the plaintiff] handed [his] grievance [bringing a failure to protect claim] failed to file it"); *Jones v. Harris*, 665 F. Supp. 2d 384, 400 (S.D.N.Y. 2009) (referring to two grievances that the plaintiff filed in connection with the loss of his property in deciding that he had alleged sufficient facts to indicate that he exhausted his administrative remedies); *Alexander v. Deming*, No. 03-CV-147, 2009 WL 1044561, at *8 (W.D.N.Y. Apr. 16, 2009) ("The record before this [c]ourt is devoid of any evidence to suggest that plaintiff filed a grievance with respect to his allegations that [the] defendant . . . destroyed his property."); *Smolen v. Kielisek*, No. 04-CV-6042, 2006 WL 2335168, at *6 (W.D.N.Y. Aug. 10, 2006) (discussing investigations following the filing of grievances regarding a plaintiff's failure to protect claim); *Anderson v. C.O. No. 8593 Pinto*, No. 01-CV-9615, 2002 WL 1585907, at *2

15

(S.D.N.Y. July 17, 2002) (holding that the plaintiff failed to exhaust his administrative remedies with regard to his destruction of property claim, where there were no allegations that he filed any grievance papers in connection with such a claim). As such, it cannot be said that these are claims for which Plaintiff could not file a grievance.

Accordingly, because Plaintiff concedes that he did not file a grievance, (SAC ¶ 9), Plaintiff would only be relieved of the exhaustion requirement if he alleged facts indicating that he was prevented or thwarted from doing so. However, no such allegations exist. (*See generally id.*) Therefore, Plaintiff's SAC must be dismissed without prejudice until such a time as he exhausts all available administrative remedies. *See Khudan v. Lee*, No. 12-CV-8147, 2015 WL 5544316, at *4 (S.D.N.Y. Sept. 17, 2015) ("Dismissal for failure to exhaust administrative remedies is appropriate where, on the face of the [c]omplaint, it is clear that plaintiff did not exhaust such remedies." (internal quotation marks and citation omitted)); *see also Jhagroo v. Carty*, No. 17-CV-3416, 2019 WL 1922287, at *2 (E.D.N.Y. Apr. 29, 2019) ("Because it is undisputed that [the] [p]laintiff did not file any grievance . . . [the] [p]laintiff's claims [for failure to protect] must be dismissed for failure to exhaust the administrative remedies available to him."); *Edwards v. Pistner*, No. 10-CV-322, 2015 WL 7288697, at *5 (W.D.N.Y. Nov. 17, 2015) (granting summary judgment on a failure to protect claim because the plaintiff did "not provide any evidence indicating that he made a reasonable attempt to follow the grievance procedures pertaining to the assault incident," leading the court to "conclude that [the] [p]laintiff did not make a reasonable or timely attempt to make a complaint of failure to protect and, as such, . . . failed to show he exhausted all administrative remedies"); *Smart v. Goord*, 441 F. Supp. 2d 631, 639 (S.D.N.Y. 2006) ("[The plaintiff's] grievances did not address the facts underlying her claim[] of . . . failure to protect. . . . Accordingly, [the plaintiff's] . . . failure to

16

protect [claim] . . . [was] dismissed for failure to exhaust."); *Anderson*, 2002 WL 1585907, at \*2 ("With respect to the [claim] that his property was destroyed . . . we find that plaintiff did not exhaust his administrative remedies.  Plaintiff does not represent that he ever filed any grievance papers concerning the destruction of his property or that he ever formally appealed any decisions through the elaborate grievance process, and thus these claims are dismissed without prejudice.")

### c.  Post-Deprivation Remedy and Personal Involvement

Plaintiff argues that there is "indisputable evidence . . . in the form of photographs that show the damage to his property," and therefore, "no grievance was necessary."  (Pl.'s Opp. 2.) Although Plaintiff does not provide any legal support for such a contention, nor is the Court aware of any, even assuming arguendo that Plaintiff did not need to exhaust his administrative remedies for a destruction of property claim, his claim does not fare any better.

The Supreme Court has held that "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of . . . the Fourteenth Amendment if a meaningful post[-]deprivation remedy for the loss is available."  *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *see also Acevedo v. Fischer*, No. 12-CV-6866, 2014 WL 5015470, at \*13 (S.D.N.Y. Sept. 29, 2014) (same), *appeal dismissed*, No. 14-3839 (2d Cir. Jan. 8, 2015).  In fact, "the state's action is not complete until and unless it provides or refuses to provide a suitable post[-]deprivation remedy."  *Acevedo*, 2014 WL 5015470, at \*13 (quoting *Hudson*, 468 U.S. at 533).  In applying this doctrine, "the Second Circuit has determined that 'New York in fact affords an adequate post-deprivation remedy in the form of, inter alia, a Court of Claims action.'"  *Id.* (italics omitted) (quoting *Jackson v. Burke*, 256 F.3d 93, 96 (2d Cir. 2001)); *see also Malik v. City of New York*, No. 11-CV-6062, 2012 WL 3345317, at \*11 (S.D.N.Y. Aug. 15, 2012) ("New York provides such an adequate post-deprivation remedy in the form of state law

causes of action for negligence, replevin, and conversion." (collecting cases)), *adopted by* 2012
WL 4475156 (S.D.N.Y. Sept. 28, 2012).  "District courts thus routinely dismiss claims by
inmates who assert that they were deprived of property by corrections officers in New York."
*Haywood v. Annucci*, No. 18-CV-10913, 2020 WL 5751530, at *7 (S.D.N.Y. Sept. 25, 2020)
(internal quotation marks and citation omitted); *see also Davis v. Collado*, No. 16-CV-7139,
2018 WL 4757966, at *16 (S.D.N.Y. Sept. 30, 2018) (collecting cases); *JCG v. Ercole*, No. 11-
CV-6844, 2014 WL 1630815, at *32 (S.D.N.Y. Apr. 24, 2014) (dismissing an inmate's
deprivation of property claim because "the existence of an adequate post-deprivation state
remedy precludes a due process claim under [Section] 1983"), *adopted by* 2014 WL 2769120
(S.D.N.Y. June 18, 2014); *Green v. Niles*, No. 11-CV-1349, 2012 WL 987473, at *6 (S.D.N.Y.
Mar. 23, 2012) (dismissing an inmate's claim because "a prison's loss of an inmate['s] property .
. . will not support a due process claim redressable under [Section] 1983 if adequate state post-
deprivation remedies are available" (internal quotation marks and citation omitted)).

 Here, Plaintiff contends that a correctional officer, and other unidentified individuals,
removed Plaintiff's property from his cell to an unknown location.  (SAC ¶ 29.)  However,
Plaintiff fails to allege that adequate post-deprivation remedies to recover the value of his lost
and/or destroyed property were unavailable.  Rather, Plaintiff claims that he filed an Inmate
Property Claim Form, which was denied.  (*Id.* ¶¶ 31–32).  Although Plaintiff asserts that his
claim was denied without sufficient reasoning, (*see id.*), Plaintiff does not allege that he further
pursued his claim in a New York Court of Claims action.  Therefore, the SAC is devoid of any
allegations which plausibly suggest that Plaintiff was denied due process when his personal
property was allegedly lost or destroyed.

To be sure, even if Plaintiff did not have an adequate post-deprivation remedy as to his loss property, Plaintiff's claim against Russo would still fail because Plaintiff has not alleged a single factual contention to indicate the Russo was involved in the loss of Plaintiff's property. Rather, Plaintiff contends that a non-defendant correctional officer, among other unnamed individuals, removed Plaintiff's property from the cell to an unknown location.  (SAC ¶ 29.)  As such, Plaintiff's claim is unviable against Russo.  *See Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020) ("[A] plaintiff must plead that each [g]overnment-official defendant, through the official's own individual actions, has violated the Constitution." (quoting *Iqbal*, 556 U.S. at 676)); *see also Walker v. Capra*, No. 22-CV-7638, 2024 WL 21938, at *5–6 (S.D.N.Y. Jan. 2, 2024) (dismissing claims against certain defendants where the plaintiff had failed to plausibly plead their personal involvement in the alleged constitutional violations); *Ford v. Aramark*, No. 18-CV-2696, 2020 WL 377882, at *14 (S.D.N.Y. Jan. 23, 2020) (dismissing claim against prison official when complaint "lack[ed] any non-conclusory allegation" about that official's personal involvement in any constitutional violation (emphasis omitted)).

Therefore, aside from the lack of exhaustion, Plaintiff's destruction of property claim is independently dismissed for failure to state a claim upon which relief may be granted.

### d.  State Law Claims

"Finally, to the extent Plaintiff seeks to assert state law claims [arising out of the events at issue], they are barred by New York Correction Law § 24, which provides that 'no civil action shall be brought in any court of the state against any officer or employee of DOCCS in his or her personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of employment and in the discharge of duties by such officer or employee.'" *McCray v. Lee*, No. 16-CV-1730, 2021 WL 4392280, at *11 (S.D.N.Y. Sept. 24, 2021)

(alterations adopted) (quoting N.Y. Correct. Law § 24); *see also Baker v. Coughlin*, 77 F.3d 12, 15 (2d Cir. 1996) (holding that Section 24 applies to claims in federal court); *Gunn*, 2021 WL 5647795, at *8 (same).  "Courts in the Second Circuit have long held that Section 24 precludes a plaintiff from raising state law claims in federal court against state employees in their personal capacities for actions arising within the scope of their employment."  *Davis v. McCready*, 283 F. Supp. 3d 108, 123–24 (S.D.N.Y. 2017) (collecting cases).  New York Corrections Law § 24 applies here, given that the actions in question "arose as a result of [Russo] discharging [his] duties as [a] correctional officer[]."  *McCray*, 2021 WL 4392280, at *11 (quoting *Boyd v. Selmer*, 842 F. Supp. 52, 57 (N.D.N.Y. 1994)).  "Further, 'there is no private right of action under the New York State Constitution where remedies are available under [Section] 1983.'"  *Id.* (alteration adopted) (quoting *Hershey v. Goldstein*, 938 F. Supp. 2d 491, 520 (S.D.N.Y. 2013)).  Accordingly, Russo's Motion is granted with respect to all claims Plaintiff makes sounding in state law.

## III.  Conclusion

For the foregoing reasons, Russo's Motion is granted in full.  Because this is the second adjudication of Plaintiffs' claims against Russo on the merits, the claims are dismissed with prejudice.  *Denny v. Barber*, 576 F.2d 465, 471 (2d Cir. 1978) (holding that the plaintiff was not entitled to "a third go-around"); *Melvin v. County of Westchester*, No. 14-CV-2995, 2016 WL 1254394, at *24 n.19 (S.D.N.Y. Mar. 29, 2016) (granting a motion to dismiss with prejudice where "[the] [p]laintiff has already had two bites at the apple, and they have proven fruitless" (alteration adopted) (internal quotation marks and citation omitted)); *Herbert v. Delta Airlines*, No. 12-CV-1250, 2014 WL 4923100, at *5 (E.D.N.Y. Sept. 30, 2014) (dismissing complaint with prejudice where "[the] [c]ourt previously granted [the pro se plaintiff] leave to replead, identifying his original complaint's deficiencies" and "[the plaintiff's] amended complaint

fail[ed] to correct any of these deficiencies," explaining that "the [c]ourt lack[ed] a basis to believe further amended pleadings would fare any better").

Additionally, as indicated in Footnote 1, the CO Defendants did not join the instant Motion and have not yet appeared in this Action.  *See supra* note 1.  However, the Court finds that dismissal of Plaintiff's claims against the CO Defendants is nonetheless proper in light of the aforementioned grounds for dismissal.  *See supra* Section II.B.  As such, Plaintiff has thirty days to explain to the Court in a filing why his claims against the remaining Defendants should not also be dismissed.  *See* 28 U.S.C. § 1915(e)(2)(B)(ii) ("[T]he court shall dismiss [a] case [proceeding IFP] at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted[.]").

The Clerk of Court is respectfully requested to terminate the pending Motion, (Dkt. No. 46), and mail a copy of this Opinion & Order to Plaintiff's address listed on the docket.

SO ORDERED.

Dated:     February 27, 2024
           White Plains, New York

_____
       KENNETH M. KARAS
       United States District Judge